LEAR, Judge.
This is a devolutive appeal by plaintiff from a judgment of the trial court refusing to award him any benefits under the Louisiana Workmen’s Compensation law, despite plaintiff’s forma pauperis petition to be awarded maximum benefits, including penalties and attorney’s fees thereunder.
After careful reading of the transcript and consideration of briefs of learned counsel, this court concludes that the opinion and judgment of the District Court is entirely correct.
Inasmuch as the trial judge’s written reasons for judgment reflect a thorough understanding of the issue and an assiduous attention to all evidentiary matter, coupled with a legalistic application of the principle relating to the preponderance of evidence, this court wishes to adopt his reasons as its own, as follows:
“Plaintiff seeks total and permanent workman’s compensation disability benefits alleging that he sustained an accident on Monday, August 16, 1965. Defendant admits the employment, the hazardous nature thereof, and that plaintiff reported that he sustained an accident at approximately 11:00 A.M. on that date. Plaintiff was paid $1.25 per hour and worked 5 days a week. Defendant denies that plaintiff was disabled as a result of the accident.
“Plaintiff was employed as a common laborer approximately 4 days before the accident. At the time plaintiff was injured he was working on a special assignment and was not in the immediate vicinity of any other employee. At the trial plaintiff described his accident as occurring when he caught his foot on a nail causing him to twist his back and *430 injure his chest when he almost fell. Plaintiff kept on working but told his fellow employee, Mr. Thedo Ellis, about the incident. Mr. Ellis advised plaintiff to report this accident immediately to his foreman. About 11:40 A.M. plaintiff did report this to this foreman, Mr. Donald McKnight, who immediately inquired as to where the accident happened, and asked if plaintiff wanted to see a physician. According to the foreman, plaintiff answered that he was under the saw with a repair crew when this happened; that he caught his foot on a nail, and 'almost fell and jugged a board into his chest and hurt his chest.' Mr. McKnight is certain that plaintiff did not mention hurting his hack. Plaintiff at first stated that he did not care to see a physician, but finally agreed after Mr. McKnight,, made it clear that if he didn’t feel well he should go to a doctor. Plaintiff visited Dr. Holliday, who had given plaintiff his pre-employment physical.
“According to plaintiff Dr. Holliday did not examine him, but only looked him over and gave him a prescription for medicine. Plaintiff took the medicine which didn’t help. At 6:30 A.M, the following day, Tuesday, plaintiff reported to his foremán and stated that the doctor told him to lay off a couple of days. On the following Thursday (August 19, 1965) plaintiff returned to work. According to plaintiff he only worked on Thursday and Friday and was laid off. However, Mr. McKnight testified that plaintiff not only worked the Thursday and Friday following the accident, but he also worked Monday, Tuesday, Wednesday, Thursday and Friday of the following week, at which time plaintiff was discharged. Plaintiff admits that while he was working subsequent to the accident, he did not complain of any pain and that he performed his work. Among other things he handled 2 x 12 lumber 18’ long. However, plaintiff testified that while he worked he was in pain. At the same time, plaintiff also testified that when he was discharged he could do the work and could not understand why he was laid off.
“The foreman, Mr. McKnight, testified that the only reason he discharged plaintiff was that he did not have sufficient work to keep him employed and that Mr. Gradney was the newest employee, having then worked only 2¡/¿ weeks.
“Since plaintiff has been laid off, plaintiff admits that he never told any officer of defendant corporation or his foreman that he was disabled. As this Court understands the record, plaintiff did not seek medical attention until May 20, 1966 when he visited Dr. LaCour and it was Dr. LaCour’s opinion that plaintiff was not disabled. Plaintiff’s next visits to a physician were on June 28 and September 20, 1966.
“Plaintiff admits that he told Dr. Arm-brister that he was not working during that period of time when in fact he was then employed. Plaintiff explains that he did not seek legal counsel at an earlier date because he hoped that his back would get better. Plaintiff testified that since the accident he has taken asprin and standback and has also taken hot baths and alcohol rubs to ease his back pain.
“According to plaintiff immediately after he was laid off by defendant he went to work on his father’s farm. Shortly thereafter he took employment through the State Employment Office and went to California as a farm laborer on a tomato picking job. After one week he found this too hard and painful so he quit and went to work in California as a truck driver. He worked in this capacity until he returned to Louisiana shortly before Christmas of 1965. He immediately went to work on a construction job building a rice drier in Mamou, Louisiana. Plaintiff worked mostly with a ‘cement hopper’. As soon as this job was completed in April of 1966 plaintiff went to work for the Mamou Rice Drier as a *431 common laborer and worked for them until June 3, 1966. In connection with this work plaintiff stacked 100 lb. rice sacks, handling approximately 500 to 600 of these sacks per day. According to plaintiff he had to quit this work because of back pain. However, defendant called as its witness Mr. Clifford Thompson, bookkeeper for Mamou Rice Drier, who testified that he saw plaintiff work during that entire period and never heard any complaint except on the last day when plaintiff said he was sick. Later plaintiff told Mr. Thompson that the doctor told plaintiff that plaintiff had a kidney infection.
“Defendant also called as its witness, Mr. Claude T. Bufford, pile driver foreman for the Iota Construction Company. Mr. Bufford testified that plaintiff worked for him doing hard manual labor for a 4 or 5 week period during September and possibly early October of 1966; that plaintiff worked hard every day; that he was a good worker, and never complained of back trouble; that plaintiff worked until the job was completed. That in connection with this work plaintiff dug holes approximately 15 inches square 7 feet deep with a post hole digger. The men also worked with 12 x 12 timbers 28 ft. long. It is clear that this type of work was hard manual labor.
“On the date of the trial plaintiff was currently employed by a construction company in or near Lake Charles as an apprentice pipe fitter.
“The facts are that within two days following the accident, plaintiff was able to return to the same type work he performed prior to the accident, and by his own testimony was able to do this hard manual labor without any complaints ; that plaintiff did this work for 7 full working days over a period of 9 days; that plaintiff did not seek medical treatment from September, 1965 until May 30, 1966 (at which time Dr. La-Cour’s report was negative); that during this same period plaintiff held several jobs requiring hard manual labor which plaintiff performed day after day. For these reasons plaintiff has failed to establish that he suffered any disability beyond the second day following the accident.”
For the reasons above assigned, judgment of the District Court is hereby:
Affirmed.